# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3980 | **DATE** | 7/17/2001 |
| **CASE TITLE** | Kathleen Kessel, et al. vs. Cook County; Cook County Sheriff's Department; Sheriff Michael Sheahan, in his official capacity; and Jim Grayes, Individually | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 8/9/01 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion by plaintiffs for leave to file second amended complaint [44] is granted. Motion by defendants to dismiss Count VIII of plaintiff's complaint [14-1] is denied. A status hearing is ordered for August 9, 2001 at 9:30 A.M.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | JUL 2 0 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 54 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

FILED FOR DOCKETING
FD-7
01 JUL 20 AM 8: 24

# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KATHLEEN KESSEL and )
BEVERLY MEADOR, )
                      Plaintiffs, )
)
vs. )     Case No. 00 C 3980
)
COOK COUNTY; COOK COUNTY )
SHERIFF'S DEPARTMENT; SHERIFF )     Honorable Judge Gottschall
MICHAEL SHEAHAN, in his official )
capacity; and JIM GRAYES, individually. )
)
                      Defendants. )

DOCKETED
JUL 2 0 2001

## MEMORANDUM OPINION AND ORDER

Plaintiffs Kathleen Kessel and Beverly Meador, investigators in the Day Reporting Unit of the Cook County Sheriff's Department, have filed a sexual harassment lawsuit against Cook County, the Sheriff's Department, Sheriff Michael Sheahan, in his official capacity, and fellow investigator, Jim Grayes, in his individual capacity. Plaintiffs have moved for leave to file a second amended complaint, while defendants have moved to dismiss one count of the first amended complaint. For the reasons set forth below, plaintiffs' motion is granted, while defendants' motion is denied.

## Background

Plaintiffs allege that there is a custom and policy of sexual harassment against women within the Day Reporting Unit of the Sheriff's Department. Plaintiffs allege that fellow investigator, Jim Grayes, repeatedly referred to them as "cunts" and "no good rotten bitches;" and among other things, pulled his pants down and exposed himself to them; asked Kessel if she was "finger-f____" herself; told others to tell Kessel that he wants to bend her over and "f___ her

54

up the ass;" bit Kessel on her buttocks; reached his hand up Kessel's skirt; and shoved his face into Kessel's crotch and said "let me eat your box." (First Am. Compl. ¶ 26.) Furthermore, plaintiffs allege that "[s]everal Sheriff Department supervisors" including Dan Romeo, their immediate supervisor, "witnessed and acknowledged Grayes' unwelcome and offensive conduct" toward plaintiffs. (*Id.* at ¶ 27.) Plaintiffs further allege that they complained of Grayes' actions to Romeo, the Day Reporting Unit Chief; to Edward Knight, Deputy Director of the unit; to Ruben Cuevas, Director of the Unit; and finally, Sheriff Michael Sheahan. In response to their complaints to all the above defendant supervisors, plaintiffs allege, nothing was done to correct the situation. Instead, plaintiffs allege that they were subjected to increased harassment by Grayes, increased threats and ostracism within the department, and denials of promotions and benefits by the Sheriff's Department because of their complaints of harassment.

In their first amended complaint, plaintiffs have alleged sexual harassment in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 ("§ 1983"); retaliation in violation of the First Amendment and § 1983; and other claims brought under state law and Title VII of the Civil Rights Act of 1964. Plaintiffs now move for leave to file a second amended complaint, in which they seek to add: (1) Romeo, Knight, Cuevas, and Sheahan in their individual capacities to their prior § 1983 claims of sexual harassment and retaliation; (2) a First Amendment retaliation claim by Meador against all defendants under § 1983; and (3) a claim by Kessel against Grayes for negligent infliction of emotional distress. Defendants oppose the first two amendments to the extent that they allege individual liability against Romeo, Knight, Cuevas, and Sheahan ("defendant supervisors"), but have offered no opposition to the addition of the claim against Grayes alleging negligent infliction of emotional distress. Additionally, defendants have moved

to dismiss the claim for Intentional Infliction of Emotional Distress ("IIED") found in Count VIII of the first amended complaint. Plaintiffs reassert this claim as Count IX in their proposed second amended complaint. Because the court grants plaintiffs' motion to file their second amended complaint and because the substance of the IIED count is the same in both complaints, the court will consider defendants' motion to dismiss that claim in connection with the second amended complaint.

## Analysis

### I. PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) states that leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). On a motion to amend, "the threshold showing as to sufficiency of the . . . [amendment] is not high." *EEOC v Warshawsky & Co.*, 1993 WL 303097, at *13 (N.D. Ill. April 15, 1993). Courts must grant leave to amend pleadings unless factors such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment are present. *Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 269 (7th Cir. 1994). In this case, defendants primarily argue that plaintiffs' amendments are futile. An amendment is futile when it "merely restates the same facts using different language, or reasserts a claim previously determined." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). An amendment is also futile when it fails to state a valid theory of liability or would not survive a motion to dismiss. *See Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992). The determination of whether to grant an amendment is within the sound discretion of the district court. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir.1990).

3

## A. Individual Liability Under § 1983 for Fourteenth Amendment Equal Protection

Intentional sexual harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the Fourteenth Amendment. *Bohen v. City of East Chicago*, 799 F.2d 1180, 1185 (7th Cir. 1986). An individual does not have to directly participate in alleged wrongdoing to be liable under 42 U.S.C. § 1983. Supervisory officials are personally liable if, while under color of state law, they act or fail to act "with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the deprivation occurs at their direction or with their knowledge and consent." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

Plaintiffs seek to add the defendant supervisors to their prior § 1983 claims of sexual harassment because, plaintiffs claim, the defendant supervisors did nothing in response to plaintiffs' claims of harassment by Jim Grayes and, in fact, discouraged them from taking their complaints further. The defendants oppose this amendment, arguing that they cannot be secondarily liable for the actions of Grayes because he did not act under color of state law; that is, they cannot be liable for Grayes' actions because plaintiffs have no viable constitutional claims against Grayes.

The court need not decide whether plaintiffs have viable constitutional claims against Grayes because plaintiffs have stated viable claims against their municipal employer, Cook County. Plaintiffs allege a "policy, custom, and/or pattern" of sexual harassment within the Sheriff's Department (an arm of Cook County). (Proposed Sec. Am. Compl. ¶ 20.) These allegations are sufficient to state a claim against Cook County under § 1983 for violations of their equal protection rights. *See generally McCormick v. City of Chicago*, 230 F.3d 319, 324-25

4

(7th Cir. 2000) (holding that even a "smattering of [conclusory] phrases" alleging a widespread

pattern of wrongful conduct by a municipality is enough to allege municipal liability under §

1983). Plaintiffs contend that the supervisor defendants should be liable for their deliberate

indifference to the sexual harassment in the department. Plaintiffs allege that they complained of

a hostile work environment, as manifested by Grayes' actions toward them, to each of the

defendant supervisors and that the supervisors did nothing to correct the situation or prevent

further hostility. In short, the plaintiffs allege that the supervisor-defendants are liable because

they "[knew] about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turned a blind

eye" to the hostile work environment that plaintiffs described. *Lanigan v. Village of East Hazel*

*Crest*, 110 F.3d 467, 477 (7th Cir. 1997).

These claims of individual liability are similar to those made by the plaintiff in

*Longstreet v. Illinois Dept. of Corrections*, Case No. 99 C 2490, 1999 WL 965715 (N.D. Ill.

Sept. 29, 1999). In *Longstreet*, the plaintiff, a corrections officer in a prison, alleged that she had

been sexually harassed by two fellow officers and sought to hold the warden individually liable

under § 1983 for the actions of these officers. *Id.* at *1. She alleged that though she had

complained about the harassment to the warden, he did nothing to prevent or correct the

wrongful conduct. *See id.* at *3. The warden sought to dismiss the § 1983 claim against him

because, he claimed, the plaintiff had failed to sufficiently allege his personal involvement in his

subordinates' wrongful conduct. *See id.* Holding that if the allegations were true, the warden

had "turned a blind eye" to the plaintiff's plight, the court found that the plaintiff had sufficiently

alleged personal involvement by the warden and upheld the plaintiff's claim of individual

liability against him. *See id.* Here, plaintiffs allege the same level of involvement by defendant

supervisors as was alleged against the warden in *Longstreet* and even more involvement by some supervisors, including Romeo, who they claim witnessed and acknowledged some of Grayes' allegedly offensive conduct. The proposed equal protection claims against Sheahan, Cuevos, Knight, and Romeo in their individual capacities appear to adequately state a claim. They are not futile.

Defendants make additional arguments opposing this amendment. First, defendants claim that the "record" does not support the plaintiffs' new allegations. However, the record in this case is incomplete because discovery is incomplete. Therefore, the court will judge the merits of the new claims only on the basis of the amended pleadings, and not on materials gathered during discovery. It is possible that the claims may not survive a future motion for summary judgment, but that question cannot be decided at the pleading stage in this case. Defendants also argue that the amendments are untimely. Delay in itself is an insufficient basis for denying leave to amend. *See Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992). Still, leave to amend may be denied when the opposing party shows that delay would cause undue hardship to it, or when a court decides that, in the interests of efficiency, a party should not be allowed to make substantive amendments shortly before trial, long after a lawsuit has commenced. *See Warshawsky*, 1993 WL 303097, at *7. Neither of these scenarios is present here, and defendants have not shown otherwise. Defendants further argue that a party should not be allowed leave to amend when the factual predicates of the amendment were known to the party at the time that the party filed its complaint. Plaintiffs, however, claim that only through discovery were they able to determine the viability of their added claims. The court, at this stage, will give plaintiffs the benefit of the doubt.

6

## B. *Individual Liability under § 1983 for First Amendment Retaliation*

In the first amended complaint, Kessel alleged that the County, the Sheriff's Department, Sheriff Sheahan, in his official capacity, and Jim Grayes, in his individual capacity, retaliated against her for complaining of sexual harassment. In the proposed second amended complaint, Kessel seeks to add the defendant supervisors, in their individual capacities, to her prior claim of First Amendment retaliation. Though Meador did not allege a First Amendment retaliation claim in the first amended complaint, Meador wishes to add such a claim against the same defendants named in Kessel's proposed First Amendment retaliation claim.

In order to establish a First Amendment retaliation claim, the facts alleged in the complaint must show that (1) the speech in which the plaintiffs engaged touched on a matter of public concern, and (2) the defendants retaliated against them because of it. *See Gustafson v. Jones,* 117 F.3d 1015, 1018 (7th Cir. 1997). The determination of whether speech amounts to a matter of public concern is based on the "content, form, and context of a given statement as revealed by the whole record." *Campbell v. Towse,* 99 F.3d 820, 827 (7th Cir. 1996), *cert. denied,* 520 U.S. 1120 (1997). While content is the most important factor, the court must also determine whether the point of the speech was to bring systemic wrongdoing to light or to further a private interest. *Smith v. Fruin,* 28 F.3d 646, 651 (7th Cir. 1994), *cert. denied,* 513 U.S. 1083 (1995). Courts have refused to give First Amendment protection to complaints of employer sexual harassment when the plaintiff voiced the complaints solely for the private purpose of stopping the harassment. *See Gray v. Lacke,* 885 F.2d 399, 411 (7th Cir.1989). Courts have, however, afforded protection to complaints that "protest [work] conditions in a public agency" and do not solely promote the plaintiff's interests. *Marshall v. Allen,* 987 F.2d 787, 796 (7th Cir.

1993).

### 1. Kessel's Speech

Kessel claims that she complained about the alleged hostile work environment within the department by reporting misconduct to her superiors including Sheriff Sheahan, and by filing formal complaints with the Internal Affairs Division of the Sheriff's Department, the Illinois Human Rights Commission ("IHRC"), the Equal Employment Opportunity Commission ("EEOC"), and the Cook County Commission on Human Rights ("CCCHR"). For this, Kessel claims, the defendant supervisors retaliated against her. The defendant supervisors argue that Kessel's complaints were not a matter of public concern because they were voiced solely in private terms and for private purposes. Furthermore, the defendant supervisors argue that the CCCHR and EEOC filings were submitted after Kessel had left her job. Therefore, they argue, Kessel could not have suffered retaliation on the job because of these filings.

Though it is a close call, the court is unwilling, at this stage, to reject Kessel's proposed First Amendment claim against the defendant supervisors. Much of Kessel's speech appears to concern her own situation in relation to Jim Grayes; however, Kessel also alleges that the defendant supervisors retaliated against her because of her filing of charges with the EEOC. This EEOC filing appears to evidence an intent by Kessel to address not only her own situation, but also wrongful conduct directed at other women. In an EEOC filing entitled "Class Charge of Discrimination," which is referenced in and attached to the proposed second amended complaint, Kessel claimed that she was filing her charge "on behalf of [herself] and all similarly situated employees of [sic] Cook County Sheriff's Department." (Exh. A to Proposed Sec. Am. Compl.)

Kessel's charge was that

> the Cook County Sheriff's Department has engaged in a pattern and practice of continuing and systemic discrimination and sexual harassment against myself and other women on account of our sex (female) in that male employees of the Sheriff's Department have knowingly subjected us to a hostile work environment, denied us employment opportunities because of our sex and retaliated against us for complaining about discrimination . . ..

(*Id.*) The Seventh Circuit has held that where a plaintiff fails to make "any attempt to distinguish her case from the run-of-the-mill single-plaintiff case," *Yatvin v. Madison Metro School Dist.*, 840 F.2d 412, 420 (7th Cir. 1988), and where a plaintiff fails to "provide [any] evidence that she was concerned with anything more than advancing her career," *Barker v. Melby*, 901 F.2d 613, 619 (7th Cir. 1990), a plaintiff's official charge of discrimination fails to touch a matter of public concern. In this particular case, Kessel provides at least some evidence, in the form of the above language in her EEOC charge, that she filed her action not only out of concern for her own plight, but also out of concern for other women in the Sheriff's Department.

Defendants argue that this filing was submitted after Kessel had left her job. Therefore, Kessel could not have suffered retaliation for it. Kessel, however, alleges that after she took emergency leave from the Sheriff's Department, defendants denied her duty disability benefits, at least in part, because of this EEOC filing.

For purposes of her motion to amend, Kessel has adequately pled that the speech, for which she was allegedly retaliated against, touches on a matter of public concern, and that defendants retaliated against her even after she took leave of the department and filed her EEOC charges. Kessel's proposed amendment is not futile.

9

## 2. Meador's Speech

Meador claims that she was subjected to retaliation because of her own complaints of sexual harassment and because of her "testimony . . . confirming Plaintiff Kessel's complaints of sexual harassment" in this lawsuit and her complaints to defendant supervisors of their "conspiracy to try to cover up Plaintiff Kessel's complaints and Defendant Grayes' abuses." (Proposed Sec. Am. Compl. at ¶¶111-112.) When a public employee speaks out about systemic harassment or the harassment of another employee, the Seventh Circuit has held that such speech touches on a matter of public concern. *See, e.g., Marshall,* 984 F.2d at 796. Meador's alleged speech not only spoke of harassment against her, but also about the alleged harassment of Kessel. Therefore, Meador's alleged speech touched on a matter of public concern. Meador's proposed First Amendment retaliation claim is not futile.

## II. *MOTION TO DISMISS CLAIM OF IIED AGAINST GRAYES*

Defendants have moved to dismiss Kessel's claim of IIED against Grayes enumerated in the first amended complaint as Count VIII. Plaintiffs renumbered that claim as Count IX in the second amended complaint. Defendants argue that this court is without jurisdiction to hear the IIED claim because it is preempted by the Illinois Human Rights Act ("IHRA") and may be entertained only before the Illinois Human Rights Commission ("IHRC").

The IHRA has an exclusivity provision which provides: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). The Act goes on to state that it is a "civil rights violation" for any employer or employee "to engage in sexual harassment." *Id.* at 5/2-102(D). Sexual harassment is defined as: "any unwelcome sexual advances or requests for

10

sexual favors or any conduct of a sexual nature when such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." *Id.* at 5/2- 101(E).

The parties do not dispute that a cause of action for sexual harassment brought under the IHRA must be filed with the IHRC. Nor do they dispute whether such a cause of action has been brought in the present lawsuit. It has not. Rather, the parties dispute whether Kessel's IIED claim is so intertwined with a sexual harassment cause of action authorized by the IHRA that it too must be filed with the IHRC. The Illinois Supreme Court has interpreted the above exclusivity provision to mean that common law torts, such as Kessel's IIED claim, must be filed with the IHRC, and not in state or federal court, *Tucker v. Cassiday, Schade & Gloor*, 2000 WL 968828, at *5 (N.D.Ill. July 13, 2000), when the claims are "inextricably linked to civil rights violations such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (1997). Plaintiffs can allege an independent basis for a tort claim when they have "alleged the elements [of the tort] without reference to the legal duties created by the [IHRA]." *Id.* The elements for an IIED claim under Illinois law are sufficiently stated when the plaintiff alleges that the defendant's actions: (1) were extreme and outrageous; (2) were done intentionally or recklessly; and (3) caused severe emotional distress. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (1988).

Plaintiff Kessel alleges that the "intentional acts of Defendant Grayes constitute extreme and outrageous conduct, beyond the bounds of decency, which inflicted severe emotional distress and mental anguish on Plaintiff Kessel." (Prop. Sec. Am. Compl. ¶ 132.) Defendants contend that the IIED claim is so linked to Kessel's claims of sexual harassment that it must be filed with

the IHRC. Specifically, defendants repeatedly argue that the basis for Kessel's IIED claim is actually the retaliation she claims that she suffered for complaints of sexual harassment. Defendants' argument is puzzling. It is unclear how defendants can argue that the IIED charge stems only from Kessel's retaliation claims. All that her complaint says is that intentional acts by Grayes gave rise to her IIED claim. While Kessel does not specify the exact conduct underlying her claim, it could be any of the intentional misconduct she allegedly suffered including assault and battery (described in Count VII of plaintiffs' proposed second amended complaint). Such misconduct violates common law duties independent of any duty imposed by the IHRA, even though these allegations may support a claim under the IHRA as well. Though it could have been pled in more detail, Count IX states a claim for IIED without reference to legal duties imposed by the IHRA. Accordingly, defendants' motion to dismiss the IIED claim is denied.

## Conclusion

For the foregoing reasons, plaintiffs' motion for leave to amend is granted and defendants motion to dismiss Count IX of the second amended complaint is denied.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 17, 2001

12