Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3980 | **DATE** | 3/13/2002 |
| **CASE TITLE** | Kathleen Kessel and Beverly Meador vs. Cook County, *et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** The Court orders that the documents submitted for *in camera* review be produced in full, without redactions. The Court orders that all of the documents produced under this order (not just the medical records) be labeled not only as confidential but also as subject to an "attorneys eyes only restriction," thus limiting the dissemination of the documents to those categories of persons identified in paragraphs 12-13 and 15 of the 09/21/01 Order. The Court orders that the documents be produced by the close of business on 03/18/02.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | |
| ✓ | Notified counsel by telephone. | MAR 14 2002 |
| | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | 3/13/2002 |
| | Copy to judge/magistrate judge. | date mailed notice |
| JJK | courtroom deputy's initials | JJK |
| | | mailing deputy initials |

Document Number

MAR 13 2002

U.S. DISTRICT COURT CLERK
02 MAR 13 AM 8:48
FILED-ED 10

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KATHLEEN KESSEL and )
BEVERLY MEADOR, )
                     )
       Plaintiffs, )
                     )        No. 00 C 3980
vs. )
                     )        Magistrate Judge Schenkier
COOK COUNTY; COOK COUNTY )
SHERIFF'S DEPARTMENT; SHERIFF )
MICHAEL SHEAHAN, in his official )
capacity; and JIM GRAYES, individually, )
                     )
       Defendants. )

DOCKETED
MAR 1 4 2002

## MEMORANDUM OPINION AND ORDER

       Plaintiffs, Kathleen Kessel and Beverly Meador, have filed this lawsuit against Cook County,

the Cook County Sheriff's Department, Sheriff Michael Sheahan (in his individual and official

capacities), and Jim Grayes, an investigator in the Cook County Sheriff's Department (in his

individual capacity). Plaintiffs assert federal law claims of sexual harassment and retaliation against

all defendants, as well as common law claims of assault and battery and intentional infliction of

emotional distress against Mr. Grayes. Plaintiffs seek a variety of legal and equitable remedies,

including compensatory damages for the emotional and physical distress they each allegedly

experienced as a result of defendants' conduct.

       The discovery dispute presently before the Court has its origins in more than twenty

subpoenas that were served by defendants in August 2001, which sought documents concerning,

among other things, plaintiffs' educational background, other employment, and medical treatment.

Plaintiffs moved to quash the subpoenas on a number of grounds (doc. # 62). On August 29, 2001,



this Court entered an order staying the return date of the subpoenas, and directing that the parties meet and confer to attempt to resolve disputes over the scope of the subpoenas (doc. # 64). During the hearing on the motion, the Court gave the parties guidance on the record as to the principles the Court would apply in ruling on the motion if the parties could not resolve their disputes.

Thereafter, on September 21, 2001, the parties submitted, and the Court entered, an agreed order that set forth a detailed procedure for dealing with the documents sought under the subpoenas (doc. # 72). In summary, the order contemplated that the recipients of defendants' subpoenas would produce the requested documents in a sealed envelope addressed to defendants' trial counsel; the sealed envelopes would be delivered to plaintiffs' trial counsel; the envelopes would be opened in the presence of two paralegals (one for plaintiffs and one for defendants); plaintiffs' paralegal would Bates stamp each document in each envelope, and make one copy of the original production; plaintiffs' counsel would review the copy of the documents; as to those documents for which there was no objection, plaintiffs' counsel would return the original sealed documents to defense counsel unredacted; to the extent that there was an objection as to certain documents, the parties would meet and confer to attempt to resolve the objections, and if they could not do so, plaintiffs' counsel would file a motion for an *in camera* inspection promptly. Upon entry of this agreed order, the Court denied plaintiffs' motion to quash the subpoenas as moot (doc. # 73).

More than five months later, on February 27, 2002, defendants filed a motion to compel production of the subpoenaed documents, claiming that defendants had submitted all of the documents obtained pursuant to the subpoenas to plaintiffs' counsel pursuant to the September 21, 2001 order, but that none of the documents had been produced by plaintiffs to defendants (doc. # 98). During the hearing on the motion, plaintiffs' counsel represented that they had produced the

documents a few days earlier (but after the defendants' motion to compel was filed). Plaintiffs represented that they had withheld certain documents that had been produced pursuant to the subpoenas, and had produced only redacted versions of others. The parties sparred about why it had taken more than five months for any of the documents to be produced, but rather than spend the time to sort out that dispute, the Court directed that by no later than March 4, 2002, plaintiffs serve on defendants a log identifying the documents withheld or redacted and the grounds for withholding production, and file with the Court a motion for protective order and a request for *in camera* review. In light of this ruling, the Court denied the motion to compel (doc. # 99).

On March 1, 2002, plaintiffs complied with that order. Plaintiffs delivered to defense counsel and to the Court a log of the withheld and redacted documents, and in addition submitted to the Court copies of the documents in question for an *in camera* review. The Court has conducted a review of the documents and considered plaintiffs' objections to production. The Court notes that with respect to each document withheld or redacted, the plaintiffs seek to justify non-production on the grounds, among others, of relevance, burdensomeness and over breadth. As the Court advised plaintiffs during the hearing on August 29, 2001, the Court believes that those objections properly lie with the subpoenaed party, and not with the plaintiffs. "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE; Civil 2nd § 2459 at 41 (1995 ed.) (and cases cited therein). Given that the subpoenaed parties have produced documents, they obviously have not asserted that the requested production was burdensome or inconvenient, or that the subpoenas sought documents so far removed from relevant issues in the case that the non-parties should be put to the task of

producing them. Thus, we reject those objections, and will instead focus our comments on each of the documents at issue and on the objections that are personal to the plaintiffs: privacy, privilege, and harassment.

That said, we turn to a review of the specific withheld or redacted documents.

**Doc. Nos. 4-5**: This is a student transcript produced by Moraine Valley Community College concerning course work by Ms. Kessel. Plaintiffs have produced only the portion of the document reflecting courses taken while Ms. Kessel was employed with the Sheriff's Department. Ms. Kessel argues that producing the full transcript would constitute an invasion of privacy. The Court overrules this objection. Ms. Kessel has offered no explanation as to why it invades her privacy to produce a transcript concerning her academic background, which an employer no doubt could obtain in connection with the employment relationship anyway. Moreover, plaintiffs offer no explanation as to why it does not invade her privacy to produce documents showing the courses she took and the grades received while employed at the Sheriff's Department, but it somehow invades her privacy to produce the same information for courses taken earlier. Accordingly, the Court orders that these documents be produced in full, without redactions.

**Doc. No. 22**: This document is a medial record produced by Dr. Languido relating to Ms. Kessel. Ms. Kessel asserts that producing this document would invade her privacy. However, Ms. Kessel has alleged that she has experienced physical and mental pain and suffering because of defendants' conduct. In the circumstances, we believe that Ms. Kessel's privacy interests should give way to production of the information that may bear upon the extent and causation of any physical or mental pain and suffering. Accordingly, the Court overrules the privacy objection and orders that document number 22 be produced.

4

In so doing, the Court notes that this document, as well as all other medical records that the Court orders produced today, will be subject to an "attorney's eyes only" provision. Thus, these records will not be disclosed to personnel in the Sheriff's office, but only to those categories of individuals set forth in the September 21, 2001 Order (09/21/01 Order, ¶¶ 12-13 and 15). The protections afforded under this order are sufficient to protect plaintiffs' privacy interests, while at the same time affording defendants discovery that may lead to admissible evidence to defend against plaintiffs' claims. *See Butta-Brinkman v. FCA International, Ltd.*, 164 F.R.D. 475, 476 (N.D. Ill. 1995) (overruled objection to discovery where, in light of the protective order entered in the case, the interests in allowing plaintiffs to discover evidence that might support their claims outweighed defendants' confidentiality concerns).

**Doc. Nos. 26-122**: These documents were produced by Treating Alternatives for Safe Communities ("TASC"), which was a former employer of Ms. Meador. Ms. Meador asserts objections of invasion of privacy and harassment. However, those objections cannot even arguably apply to certain of the documents which were withheld: a cover letter from TASC returning documents requested by the subpoena (doc. no. 26); a copy of the subpoena (doc. nos. 27-29); and TASC's document retention policies (doc. nos. 30-32). While there was nothing particularly illuminating about these documents, it was pointless for plaintiffs to withhold them. They should be produced.

The other TASC documents withheld are, in the main, garden variety personnel documents one would expect to find in any personnel file, such as Ms. Meador's application materials to TASC (doc. nos. 38-39, 44, 72-87, 119-122); personnel data forms, which no doubt contain much of the same information that is on Ms. Meador's personnel data forms at the Sheriff's Department (doc.

nos. 41-42, 113); professional certifications (doc. nos. 40-43); documents showing her earnings in 1992 and 1993 from TASC (doc. nos. 33-34); performance evaluations (doc. nos. 46-56, 89-96, 99-109, 117-18); miscellaneous insurance and benefit forms (doc. nos. 57-70, 88); various attendance documents (doc. nos. 97-98, 110-112, 114-116); and separation documents (doc. nos. 35-37, 45). We see no privacy concerns here that cannot be handled by the confidentiality/attorneys' eyes only designations in the protective order and the September 21, 2001 order. Moreover, having reviewed the materials, we do not see great potential here for harassment. Accordingly, the Court orders these documents to be produced.

**Doc. Nos. 123-135**: These documents are medical records relating to Ms. Kessel produced by Dr. Haldeman. Plaintiffs seek to withhold these documents on the grounds of privacy and harassment. We can appreciate that anyone would not want to see their personal medical information to be indiscriminately disclosed to a broad group of people. However, given that Ms. Kessel claims physical and emotional pain and suffering, we believe that the interest of defendants in obtaining information that may be used to defend those claims outweighs those interests – particularly given that these documents will be produced subject to an attorneys' eyes only provision that will greatly restrict the extent to the disclosure, and in particular, will prevent employees of the Sheriff's office from having access to them. Accordingly, the Court orders these documents produced.

**Doc. Nos. 136-197**: These documents were produced by the Indian Springs School District concerning prior employment of Ms. Kessel. Ms. Kessel objects to production of these documents based on invasion of privacy and harassment. Again, several of the documents (doc. nos. 136-139) are copies of the subpoena or the transmittal letter by Indian Springs, and thus there is no basis to

withhold them. The other documents consist of application and initial employment materials (doc. nos. 143-145, 147-49, 150-60, 163); routine medical, tax and personnel data (doc. nos. 140-42, 146, 169); a copy of the collective bargaining agreement covering Indian Springs School District (doc. nos. 170-97); and separation documents (doc. nos. 161-62, 164-67). The Court sees nothing in these documents that would invade Ms. Kessel's privacy or be harassing, and thus will order them produced.

**Doc. Nos. 198-230**: These documents consist of medical records relating to Ms. Kessel produced by Dr. Nowboloski. What we said about Ms. Kessel's gynecological records produced by Dr. Haldeman applies here as well. We understand the sensitivity that Ms. Kessel may have about producing these records. But, given her claims in the case and the existence of a very restrictive protective order, the Court finds that any concerns about privacy or potential harassment should yield to the interest of producing documents that may lead to discovery of admissible evidence to defend against plaintiffs' claims.

**Doc. Nos. 236-83**: These documents are academic records for Ms. Kessel produced by Northern Illinois University covering dates between 1984 and 1987. Ms. Kessel objects to production of these documents on the basis of invasion of privacy. This production (which includes multiple copies of the same documents) does not, in the Court's view, implicate serious privacy concerns. The Court orders that these documents be produced.

**Doc. Nos. 353-372, 374-381, 403-07, 411-12**: These are all records relating to Ms. Kessel produced by DePaul University. Ms. Kessel objects to production on the basis of invasion of privacy. Document Nos. 353-372 include a paper written for a college course, as well as various transfer of credit request forms. Document Nos. 374-80, 403-07, and 411-12 are transcript forms;

and Document No. 381 is a copy of a pamphlet. As with the other school records we have addressed, we do not believe that these records implicate any serious privacy concerns for Ms. Kessel that cannot be accommodated by the protective order. The Court orders that these documents be produced.

**Doc. Nos. 421, 488, 490, 494, 503**: These documents consist of medical records produced by Catholic Health Partners relating to Ms. Meador. Plaintiffs assert invasion of privacy and doctor/patient privilege as the basis for withholding production. The Court overrules these objections. *First*, while consultation with a mental health professional is privileged, *Jaffee v. Redmond*, 518 U.S. 1, 18 (1996), other types of medical consultation due do not fall within any privilege – and much of the information redacted pertains to medical information that falls within this latter, unprivileged category. *Second*, to the extent that the redacted information may originally have been privileged, that privilege has been waived. To begin with, plaintiffs have indicated their intent to call mental health professionals to support their claims of emotional pain and suffering; as a result, they have waived their privilege as to other mental health information that may exist in their medical records. *See Hucko v. City of Oak Forest*, 185 F.R.D. 526 (N.D. Ill. 1999). Moreover, the portions of these particular documents from Catholic Health Partners that have been produced contain a wealth of family history and medical information concerning Ms. Meador; having produced this information, plaintiffs have waived any privilege in the rest. *Third*, Ms. Meador's understandable concerns about the privacy of this information are insufficient to preclude production, given the claims she has asserted in the case and the existence of a protective order that will limit the extent of disclosure. Accordingly, the Court orders these documents produced in unredacted form.

**Doc. Nos. 877-889**: These documents are psychological testing produced by Dr. Pulls relating to Ms. Kessel. Ms. Kessel opposes production based on the psychotherapist-patient privilege, the Illinois Confidentiality Mental Health Record and Review Act, 740 ILCS 110/1, *et. seq.*, and privacy concerns. The Court overrules these objections. *First*, because Ms. Kessel intends to offer mental health professional testimony to support her claims of emotional pain and suffering, she cannot assert the psychotherapist-patient privilege to prevent production of other documents concerning consultation with or assessment by mental health professionals. *See Hucko, supra.* *Second*, given that this case principally arises under federal statutory law, we do not believe that the Illinois statute requires a different result. And, in any event, the Illinois Confidentiality Mental Health Record and Review Act does not prohibit disclosure of documents, but rather requires that the Court, after an *in camera* examination, determines that the documents are relevant, not unduly prejudicial or inflammatory and otherwise are admissible; that other evidence is unsatisfactory to establish the facts sought; and disclosure is more important to substantial justice and protection from injury to the therapist-patient relationship. We believe those standards are met here. *Third*, while these documents plainly are sensitive and private, those considerations are insufficient, in the Court's judgment, to prevent production of evidence (under the restrictive "attorneys eyes only" protective order) that may be directly relevant to the defense of Ms. Kessel's claim for emotional pain and suffering damages. The Court orders that these documents be produced.

**Doc. Nos. 911, 913, 917, 1014, 1071**: These are documents concerning Ms. Meador produced by Dr. Lewis. The documents have been produced, but with selected portions redacted. Ms. Meador asserts the redacted portions may be withheld based on attorney-client and work product privilege; doctor-patient privilege; and invasion of privacy. The Court overrules these objections.

At the outset, we note that Document Nos. 911, 913, 917 and 1048 are identical to Document Nos. 488, 490, 494 and 921, respectively. Accordingly, for the same reason as stated for this latter group of documents, the Court orders that these copies of those same documents be produced as well, in non-redacted form. With respect to Document No. 1071, the one line redacted from that document reflects Ms. Meador's suggestion that the doctor speaks with her counsel, a statement that does not reflect any confidential communications with her attorney or work product from her attorney, and thus does not fall within the attorney-client or work product privileges. For the reasons already stated with respect to other medical records, we do not believe that the redacted portion of document 1071 falls within any doctor-patient privilege or constitutes an invasion of privacy of Ms. Meador. Accordingly, the Court orders Document No. 1071 to be produced in non-redacted form.

**Doc. Nos. 1093-1100 and 1103**: These are psychiatric records relating to Ms. Meador produced by Dr. Haddad. Ms. Meador asserts psychiatric-patient privilege and privacy as the basis for withholding production of Document Nos. 1093-1100 in their entirety, and for redacting one line from Document No. 1103. For the same reasons as discussed above with respect to other psychiatric records, the Court overrules these objections. Accordingly, the Court orders that these documents be produced in their entirety.

**Doc. No. 1203**: This is a medical record relating to Ms. Meador produced by Dr. Donahue, which has been produced with the exception of brief entry. As to this entry, Ms. Meador asserts privacy as the basis for withholding production. The Court overrules that objection. Any privacy concerns are accommodated here by the restrictions imposed by the protective order. Accordingly, the Court orders that this document be produced in full.

**Doc. Nos. 1209, 1217**: These are redacted records relating to Ms. Meador produced by Dr. Jurek. Ms. Meador objects to production of the redacted portions based on privacy. For the reasons stated with respect to earlier documents containing medical information, the Court overrules this objection and orders that these documents be produced in unredacted form.

**Doc. Nos. 1230, 1233 and 1234**: These are psychiatric records relating to Ms. Meador that were produced by Dr. Saiyeed. Plaintiffs have redacted certain portions of these documents, and base their objection to producing the redacted portions on psychiatric-patient privilege and privacy. For the reasons stated earlier, the Court finds that any psychotherapist-patient privilege has been waived, and that the privacy concerns with respect to these documents are sufficiently accommodated by the protective order. Accordingly, the Court overrules the objections, and orders that these documents be produced.

**Doc. Nos. 1240, 1243 and 1244**: These documents are psychiatric records relating to Ms. Kessel that were produced by the Midwest Psychological Association. Plaintiffs have produced redacted versions of these documents, and objects to producing those portions that have been redacted based on psychotherapist-patient privilege and privacy. These documents are duplicates of Document Nos. 1230, 1233 and 1234 discussed above; moreover, with respect to Document No. 1240, the Court notes that plaintiffs have produced a portion that plaintiffs redacted from Document No. 1230. For the reasons set forth with respect to Document Nos. 1230, 1233 and 1234, the Court overrules the objections and orders that Document Nos. 1240, 1243 and 1244 be produced without redactions.

**Doc. Nos. 1258, 1259, 1262**: These are medical records relating to Ms. Kessel produced by Dr. Kennedy. Plaintiffs have produced the bulk of the information contained on these documents,

11

but have redacted a few entries. In support of the redactions, plaintiffs assert privacy interests. The Court finds that the protective order is sufficient to accommodate privacy interests, and thus overrule the objections and orders that these documents be produced in unredacted form.

**Doc. Nos. 1277-1291**: These are medical records relating to Ms. Kessel that were produced by Dr. Haldeman. Plaintiffs object to production of these documents on the ground of privacy. For the reasons stated with respect to other medical records, the Court overrules this objection and orders that the documents be produced.

**Doc. Nos. 1313, 1314 and 1317**: These are medical records relating to Ms. Kessel that were produced by the McGrath Clinic. These are the same documents as Document Nos. 1259, 1258, and 1262, respectively. For the reasons stated with respect to those documents, plaintiffs objections to production of the redacted portions of these documents is overruled, and the Court orders that Document Nos. 1313, 1314, and 1317 be produced in full.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court orders that the documents submitted for *in camera* review be produced in full, without redactions. In so holding, the Court – mindful of the difference between relevance for discovery purposes and for trial purposes – expresses no view as to the admissibility at trial of the documents produced under this order. The Court also has carefully considered plaintiffs' understandable concern about the release of their sensitive medical information, but believes that the restrictive protective order in place in this case properly accommodates those concerns while at the same time preserving the defendants' legitimate interest in obtaining discovery that may assist in their defense of plaintiffs' damages claims.

Moreover, the Court is mindful of the strained (to say the least) atmosphere between the plaintiffs and the Sheriff's office and various of its members. For this reason, the Court orders that all of the documents produced under this order (not just the medical records) be labeled not only as confidential but also as subject to an "attorneys eyes only restriction," thus limiting the dissemination of the documents to those categories of persons identified in paragraphs 12-13 and 15 of the September 21, 2001 Order. The Court orders that the documents be produced by the close of business on Monday, March 18, 2002.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: March 8, 2002