| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3980 | **DATE** | 5/2/2003 |
| **CASE TITLE** | Kathleen Kessel, et al vs. Cook County, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for partial summary judgment (R. 247-1) is granted in part and denied in part. The motion is denied with respect to Count One. The motion is granted with respect to Counts Two, Three, Four and Seven. Count Two is dismissed with prejudice as to the Cook County Sheriff's Department, Romeo, Knight and Grayes; and Counts Three, Four and Seven are dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY - 5 2003 | |
| | Notified counsel by telephone. | | date docketed | 260 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | Th | |
| | | 03 MAY -2 PM 12:58 | date mailed notice | |
| TH | courtroom deputy's initials | | 5/2/03 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY - 5 2003

KATHLEEN KESSEL, and )
BEVERLY MEADOR, )
)
    Plaintiffs, )
)
v. ) No. 00 C 3980
)
COOK COUNTY, COOK COUNTY )
SHERIFF'S DEPARTMENT, EDWARD, )
KNIGHT, DAN ROMEO, and JIM )
GRAYES, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge

Defendants have moved for partial summary judgment. For the reasons discussed below, Defendants' motion is granted in part and denied in part.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

260

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). The Court accepts the non-moving party's version of any disputed facts but only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## BACKGROUND

Kathleen Kessel joined the Cook County Sheriff's Department as an investigator in the Day Reporting Unit of the Department of Community Services and Intervention ("DCSI") in May 1995. (*See* R. 257-1, Pls.' L.R. 56.1(b)(3) Resp., ¶ 4.) Initially, Kessel worked as a caseload investigator in the Day Reporting Unit, but in September 1997, she moved to an assignment in the Monitoring Room of the Day Reporting Unit. (*Id.*, ¶ 11.) Defendant Jim Grayes also moved to the Monitoring Room in September 1997. (*Id.*, ¶ 10.) Beverly Meador joined the Cook County Sheriff's Department as an investigator in the Day Reporting Unit in September 1993. (*Id.*, ¶ 5.)

2

Soon after she transferred to the Monitoring Room, Kessel began to experience difficulty with Grayes, who repeatedly used sexually suggestive and abusive language in her presence. (*See* R. 257-1, Pls.' L.R. 56.1(b)(3) Resp., ¶¶ 13-14.) In December 1998, Kessel complained in writing to her supervisor, Dan Romeo, who, in turn, reported Kessel's complaints to Edward Knight, the Deputy Director of the Day Reporting Unit. (*Id.*, ¶ 14.) Romeo and Knight both attempted to counsel Grayes, who assured them that he would refrain from using inappropriate language and would treat Kessel with respect. (*Id.*, ¶¶ 18, 20.)

Despite assurances to Romeo and Knight, Grayes apparently continued using sexually suggestive and abusive language with Kessel, Meador and others. In March 1999, Kessel complained in writing to the Department of Community Services and Intervention ("DCSI") regarding Grayes' behavior. (*See* R. 257-1, Pls.' L.R. 56.1(b)(3) Resp., ¶ 21.) Shortly thereafter, Kessel spoke with William Wallace, the Deputy Director of DCSI. (*Id.*, ¶ 23.) Wallace assured Kessel that her complaints would be handled, and she signed a statement that she did not wish to make a formal statement or file a complaint against any supervisor. (*Id.*, ¶ 25.)

After the meeting with Wallace, Kessel was moved out of her office during the hours her shift overlapped with Grayes. (*See* R. 257-1, Pls.' L.R. 56.1(b)(3) Resp., ¶ 27.) Kessel stayed in different positions for a month or so before she gradually began to move back to her old office full-time. (*Id.*) Grayes, however, continued to use sexually suggestive and abusive language with Kessel, and in July 1999, she complained again in writing. (*Id.*, ¶ 32.) This time, Romeo asked for written statements from various potential witnesses to Grayes' conduct. (*Id.*, ¶ 33.) After receiving statements from various persons, Romeo informed Knight, who requested in writing that DCSI conduct an investigation. (*Id.*, ¶ 37.) DCSI concluded that there was

3

insufficient evidence to substantiate Kessel's complaints but recommended that Knight counsel Grayes and transfer Kessel to some position where she need not interact with him. (*Id.*, ¶ 38.)[1]

On July 29, 1999, Kessel took emergency medical leave. (*See* R. 257-1, Pls.' L.R. 56.1(b)(3) Resp., ¶ 40.) She contends that the hostile work environment forced her to do so and that her treating physicians have not released her to return to work. (*Id.*) Kessel subsequently filed a complaint with the Cook County Commission on Human Rights, the Illinois Department of Human Rights ("IDHR"), and the Equal Employment Opportunity Commission ("EEOC"). (*Id.*, ¶¶ 3, 40.) Meador filed her own complaint with the EEOC and IDHR in May and June 2001. (*Id.*, ¶ 3.)

## ANALYSIS

### I. COUNT ONE – PLAINTIFFS' TITLE VII CLAIMS

Defendants argue that certain of Plaintiffs' Title VII claims are barred because the conduct complained of occurred more than 300 days before Plaintiffs filed their charges of discrimination with the EEOC. Specifically, because Kessel filed her charge of discrimination on December 7, 1999, Defendants argue that she cannot sue under Title VII for any conduct that occurred prior to February 11, 1999. Under the same rationale, Defendants argue that Meador cannot sue under Title VII for any conduct that occurred prior to July 26, 2001.

Plaintiffs counter that such claims are timely under the continuing violation doctrine in hostile work environment cases. Under that doctrine, an employee can recover on a hostile work environment theory for acts that occur more than 300 days before the employee filed a charge of

---

[1] Meador also experienced verbal and physical harassment from Grayes. She reported some of these incidents to her supervisors but did not reports others. (*See* R. 257-1, Pls.' L.R. 56.1(b)(3) Resp., ¶ 57.)

discrimination as long as the acts were part of the same hostile work environment and at least one of the acts occurred within the 300-day period. *See National R.R. Passenger Corp. v. Morgan*, 563 U.S. 101, 117-18, 122 S.Ct. 2061, 2074-75, 153 L.Ed.2d 106 (2002). Defendants concede that some of the alleged acts of sexual harassment occurred within the 300-day period, but they suggest that the acts are separate, discrete acts because each would have been actionable in isolation. (*See* R. 259-1, Defs.' Reply in Support of Mot. for Summary Judgment, at p. 3.)

The specific acts of harassment at issue are contained in Paragraphs 38b, e, f, g, h and 41 of the Third Amended Complaint. Those acts break down into two broad categories. First, Plaintiffs contend that they were subjected to vulgar, abusive, and sexually suggestive language as well as sexually suggestive photographs and imagery. (*See, e.g.*, R. 150-1, Pls.' Third Amended Complaint, ¶ 38b ("Repeatedly and continuously demeaning and degrading Plaintiff Kessel to and in front of prisoners, other investigators, and supervisors."); *id.*, ¶ 38e ("Showing nude pictures of women, which he kept in his desk drawer, to Plaintiff Kessel and telling her that these women were his girlfriends.").) Second, Plaintiffs contend that they were subjected to various assaults and inappropriate physical contact. (*See, e.g., id.*, ¶ 38f ("Committing repeated batteries on Kessel by biting her on the buttocks in early 1998, in September of 1998, and again in February of 1999, and attempting to bite Plaintiff Meador on the buttocks and biting her on the breast in early 1999."); *id.*, ¶ 38g ("Repeatedly grabbing Plaintiff Kessel around the waist and butt, forcing her face into her crotch, and saying, 'Let me eat your box.'"); *see also id.*, ¶¶ 38h, 41.)[2]

---

[2] The Court notes that although Defendants dispute liability, they do not challenge the substance of these claims at the summary judgment stage.

The Court agrees with Plaintiffs that both categories of conduct are timely under the continuing violation doctrine because both categories are part of Plaintiffs' hostile work environment claims. As the Supreme Court explained in *Morgan*, hostile work environment claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." 122 S.Ct. at 2073. The Supreme Court further explained: "The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years, and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id. See also Jensen v. Henderson*, 315 F.3d 854, 859 (8th Cir. 2002). Because Defendants admit that some of these alleged acts (in particular, the use of vulgar, abusive, and sexually suggestive language) took place within the 300-day period, the Court concludes that Plaintiffs' hostile work environment claims, including all of the allegations contained in Paragraphs 38 and 41 of the Third Amended Complaint, are timely.

## II. COUNT TWO – PLAINTIFFS' SECTION 1983 EQUAL PROTECTION CLAIMS

### A. The Cook County Sheriff's Department

Defendants argue that Plaintiffs' Section 1983 claims against the Cook County Sheriff's Department fail because Plaintiffs cannot show that the Department violated their rights by means of: (1) an express policy; (2) a widespread custom or practice; or (3) a constitutional injury caused or ratified by a person of final policy making authority. *See Kujawksi v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999). This Court agrees.

First, Plaintiffs do not suggest that the Cook County Sheriff's Department violated their rights by means of an express policy. To the contrary, Plaintiffs admit the Department had a written policy prohibiting sexual harassment. (*See* R. 64-1, Defs.' L.R. 56.1(a) Reply, ¶ 19.)

6

Second, Plaintiffs have not presented evidence that the harassment they suffered was part of a widespread custom or practice within the Cook County Sheriff's Department. Plaintiffs, for example, have failed to supply evidence that the Sheriff's Department "customarily or habitually ignored complaints of sexual harassment." *See Garrison v. Burke*, 165 F.3d 565, 572 (7th Cir. 1999). Finally, although Plaintiffs cite various individuals who were "superior in rank," Plaintiffs do not point to any evidence that any persons with final policy making authority caused or ratified the conduct that caused their injuries. (*See* R. 64-1, Defs.' L.R. 56.1(a) Reply, ¶ 10.)

Accordingly, Plaintiffs' Section 1983 claims against the Cook County Sheriff's Department fail.

### B. Romeo and Knight

Defendants contend that Plaintiffs' Section 1983 claims against Romeo and Knight fail because Plaintiffs cannot establish that they knew of, approved of, and condoned the sexual harassment or that they turned a blind eye to the conduct for fear of what they might see. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000); *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). Although it is clear that Romeo and Knight were aware of at least some of the sexual harassment at issue, Plaintiffs have failed to supply any evidence that would permit a reasonable jury to conclude that Romeo and Knight approved of, condoned, or turned a blind eye to the conduct. To the contrary, Plaintiffs admit that Romeo and Knight attempted to counsel Grayes, spoke with others who witnesses the sexual harassment, and informed their supervisors of the complaints. (*See, e.g.*, R. 257-1, Pls.' L.R. 56.1(b)(3) Resp., ¶¶ 14, 18, 20, 33, 37.) Plaintiffs argue, without citation to any evidence, that whether Romeo and Knight approved of, condoned, or turned a blind eye to the conduct is "a jury question." Such conclusory assertions

are not sufficient to withstand summary judgment. *See Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."). Thus, Plaintiffs' Section 1983 claims against Romeo and Knight fail.

### C.  Grayes

Defendants argue that Plaintiffs' Section 1983 claims against Grayes fail because Plaintiffs have not pointed to any evidence that Grayes was acting under color of state law when he sexually harassed Plaintiffs. In order to prevail against a municipal employee under Section 1983, a plaintiff must show: (1) that the defendant employee deprived her of a right secured by the Constitution and laws of the United States, and (2) that the defendant employee acted under color of state law when he deprived her of that right. *See Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995); *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989). In this case, Plaintiffs have not pointed to any evidence suggesting that Grayes acted under color of state law when he sexually harassed Plaintiffs, and therefore, Plaintiffs' Section 1983 claims against him fail.

### III.  COUNT THREE – PLAINTIFFS' TITLE VII RETALIATION CLAIMS

Under Title VII, a plaintiff makes a prima facie case of retaliation if she shows that: (1) "she engaged in a protected activity under Title VII;" (2) "she suffered an adverse employment action subsequent to her participation;" and (3) "there exists a causal connection between the adverse employment action and her participation in protected activity." *Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 708 (7th Cir.1995). In this case, Defendants argue that Plaintiffs'

Title VII retaliation claims fail because they have failed to supply any evidence that they suffered an adverse employment action.

The Seventh Circuit has noted that "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (citation omitted). *See also Silk v. City of Chicago*, 194 F.3d 788, 800 (7th Cir. 1999) ("Minor or trivial actions that make an employee unhappy" are not actionable adverse employment actions). Rather, in order to constitute an adverse employment action, the employer's actions must "significantly affect her job responsibilities or benefits." *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 888 (7th Cir. 2001).

Plaintiffs do not suggest that they suffered an adverse employment action *per se*; instead, Plaintiffs argue that they suffered a constructive discharge because their working conditions became so intolerable that they were effectively "forced to leave." (*See* R. 257-1, Pls.' Opp. to Mot. for Summary Judgment, at pp. 7-8.) As Defendants point out, however, Plaintiffs never actually resigned their employment. This dooms Plaintiffs' Title VII retaliation claim under a constructive discharge theory. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 774 n.2 (7th Cir. 2002) (constructive discharge requires that the plaintiff actually resign); *Bragg v. Navistar Int'l*

9

*Transp. Corp.*, 164 F.3d 373, 377 (7th Cir. 1998) (constructive discharge protects a "plaintiff who decides to quit rather than wait around to be fired").[3]

Accordingly, Plaintiffs' Title VII retaliation claims fail.

## IV. COUNT FOUR – PLAINTIFFS' SECTION 1983 FIRST AMENDMENT RETALIATION CLAIMS

Plaintiffs concede that in order to prevail on their Section 1983 claim based on Defendants' retaliation for Plaintiffs' exercise of their First Amendment rights by speaking out about sexual harassment, Plaintiffs must establish that: (1) their speech was constitutionally protected; and (2) the Defendants' retaliation was motivated by Plaintiffs' speech. *See Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999). Setting aside the question whether Plaintiffs' speech here was protected by the First Amendment, as discussed in Section III, *supra*, Plaintiffs have not provided any evidence that they suffered any retaliation for speaking out about sexual harassment. Thus, Plaintiffs' Section 1983 First Amended Retaliation claims fail.

## V. COUNT VII – PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS AGAINST GRAYES

The parties agree that Illinois law, which governs Kessel's claim for negligent infliction of emotional distress, requires that Plaintiffs prove the breach of a duty owed by Grayes to Plaintiffs. *See Parks v. Kownacki*, 193 Ill.2d 164, 181, 737 N.E.2d 287, 296-97 (Ill. 2000). Further, the parties agree that Kessel cannot establish that Grayes owed any duty to his fellow

---

[3] Plaintiffs' Third Amended Complaint alleged various actions taken by the Defendants that Plaintiffs contended were adverse employment actions. (*See* R. 150-1, Pls.' Third Amended Complaint, ¶¶ 45, 77, 81, 102.) In their opposition to Defendants' motion for summary judgment, however, Plaintiffs do not address those actions at all and Plaintiffs provide no evidentiary support for them. Instead, Plaintiffs' opposition to Defendants' motion to summary judgment focuses exclusively on their constructive discharge argument.

10

employees. Kessel urges this Court to establish "a newly defined duty upon co-employees" that would support liability under the facts of this case. (*See* R. 257-1, Pls.' Opp. to Mot. for Summary Judgment, at pp. 10-11.) This Court declines to do so. *See Miller v. Ford Motor Co.*, 152 F.Supp.2d 1046, 1050 (N.D. Ill. 2001) ("Federal courts have no power to create state law, and 'a federal court must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be a wise policy.'") (citation omitted). Accordingly, Kessel's claim against Grayes for the negligent infliction of emotional distress fails.

## CONCLUSION

Defendants' motion for partial summary judgment (R. 247-1) is granted in part and denied in part. The motion is denied with respect to Count One. The motion is granted with respect to Counts Two, Three, Four and Seven. Count Two is dismissed with prejudice as to the Cook County Sheriff's Department, Romeo, Knight and Grayes; and Counts Three, Four and Seven are dismissed with prejudice.

DATED: May 2, 2003          ENTERED

                                                    AMY J. ST. EVE
                                                    United States District Court Judge